United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANI OSIEL MUY ELIAS,<br>Petitioner,<br>v.<br>SERGIO ALBARRAN, et al.,<br>Respondents. | Case No. 3:26-cv-08313-JSC<br><br>**ORDER RE: PRELIMINARY INJUNCTION** |

Petitioner Dani Osiel Muy Elias filed a habeas petition and motion for a temporary restraining order, seeking to enjoin his detention by the Department of Homeland Security's Immigration and Customs Enforcement ("ICE"). (Dkt. Nos. 1, 3.[1]) The Court granted Petitioner's motion, ordered his release from custody, and enjoined Respondents from re-detaining him absent prior notice and a pre-deprivation hearing. (Dkt. No. 5.) Pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), the Court finds the motion for a preliminary injunction appropriate for decision without oral argument and vacates the August 24, 2026 hearing. Having reviewed the parties' submissions, and the relevant legal authority, the Court GRANTS Petitioner's motion. Petitioner has demonstrated serious questions as to the merits of his Due Process claim, stands to suffer irreparable harm from unlawful detention, and the balance of the equities tips sharply in his favor.

**BACKGROUND**

Petitioner fled to the United States from Guatemala in 2022 when he was 16 years old. (Dkt. No. 3-3 at ¶¶ 11-14.) He and his mother, who arrived separately, fled to escape years of

[1] Record Citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the document.

United States District Court
Northern District of California

severe domestic abuse at the hands of his mother's partner. (Dkt. No. 1 at ¶ 5.) When Petitioner arrived in the United States, he turned himself into immigration authorities and spent about two months in a shelter. (Dkt. No. 3-3 at ¶ 12.) "Because he was an unaccompanied child, DHS transferred him to the custody of the Office of Refugee Resettlement (ORR)" and "ORR later released him to his aunt, Sucely Muy Elias, a vetted family sponsor, after the government determined that he was neither a danger to the community nor a flight risk." (Dkt. No 1 at ¶ 2.) Petitioner now lives in Daly City with his mother, safe from the domestic violence they fled, has a job at a Korean restaurant, and no criminal history. (Dkt. No. 3-3 at ¶¶ 14-15.)

On Monday, August 10, 2026, Petitioner stepped outside his home at 7:30 a.m. and four United States Immigration and Customs Enforcement ("ICE") officers arrested him, handcuffed him, and placed him in an SUV. (Dkt. No. 3-4 at ¶ 7.) He was driven to a parking structure "where the officers presented him a document and instructed that he must sign corroborating the information." (*Id.*) Although he asked the officers to loosen the handcuffs because he was in pain, they refused to do so. (*Id.*; Dkt. No. 3-6 (photographs of Petitioner's wrists).) Later that day, Petitioner filed the underlying habeas petition and motion for a TRO. (Dkt. Nos. 1, 3.) Petitioner challenges his detention under the Due Process Clause of the United States Constitution. (Dkt. No. 1 ¶¶ 50-57.) On August 11, 2026, the Court granted Petitioner's motion for a TRO and he was released the same day. (Dkt. Nos. 5, 7.) Respondents were ordered to show cause as to why a preliminary injunction should not issue.

**DISCUSSION**

"A plaintiff seeking a preliminary injunction must establish that [1] he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 20 (2008) (citation omitted). "[I]f a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips sharply in the plaintiff's favor and the other two *Winter* factors are satisfied.'" *All. for the Wild Rockies v. Peña*, 865 F.3d 1211, 1217 (9th Cir. 2017) (citing *Shell Offshore, Inc. v.*

United States District Court
Northern District of California

*Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013)). The final two factors in this analysis "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

**A. Serious Questions on the Merits**

Petitioner has demonstrated serious questions on the merits of his procedural due process claim. The Fifth Amendment guarantees that "[n]o person shall ... be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from imprisonment ... lies at the heart of the liberty" that the Fifth Amendment's Due Process Clause protects. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). "[T]he Due Process Clause applies to all 'persons' within the United States," including noncitizens, "whether their presence here is lawful, unlawful, temporary, or permanent." *Id.* at 693; *see also Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) ("'The Fifth Amendment entitles [noncitizens] to due process of law' in the context of removal proceedings.") (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). The Due Process Clause generally "requires some kind of a hearing before the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990).

Petitioner has a protected liberty interest in remaining out of custody as he has been for the past four years. The government does not dispute that because Petitioner entered as an unaccompanied child, when his custody was transferred to ORR it was statutorily directed to consider whether he was a "danger to self, danger to the community, and risk of flight" in determining his placement, 8 U.S.C. § 1232(c)(2)(A), and to release him upon finding that detention was not necessary "to secure the child's timely appearance" or "to ensure the child's safety or that of others," 45 C.F.R. § 410.1201. Petitioner has a strong interest in remaining at liberty unless he no longer meets these criteria, and the government has offered no evidence suggesting any changed circumstances.

Instead, the government insists there was no due process violation because for those detained under Section 1226(a) "[t]he next step is a custody redetermination hearing before a neutral adjudication" and "[t]hat procedure remains available to him."[2] (Dkt. No. 8 at 6 (citing 8

[2] The government also reiterates its position that Petitioner's detention should be governed by U.S.C. § 1225(b) rather than 8 U.S.C. § 1226(a), but it concedes—as it must—that the Ninth

C.F.R. § 236.1(d)(1)).) The government relies almost exclusively on *Rodriguez Diaz v. Garland*, which is factually inapposite as it involved a noncitizen who was already in custody because an immigration judge had denied bond finding he was a danger to the community due to his gang affiliation, and the petitioner filed a habeas petition seeking *second* bond hearing to challenge his prolonged decision. 53 F.4th 1189, 1194-95 (9th Cir. 2022). The government's argument that the only process Petitioner—who has had no prior finding of dangerousness—is due under 1226(a) is a post-deprivation hearing is legally unsupported.[3]

Courts throughout the Ninth Circuit have held that "even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody [ ]he has a protected liberty interest in remaining out of custody." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025*); see also Valencia Zapata v. Kaiser*, 801 F. Supp. 3d 919, 932 (N.D. Cal. 2025) ("[A]s courts have repeatedly recognized, conditional release from physical restraint gives rise to a protected liberty interest." (citing *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972))); *Garcia Domingo v. Castro*, 806 F. Supp. 3d 1246, 1252 (D.N.M. 2025) (holding petitioner who entered as an unaccompanied minor and was released by ORR under 8 U.S.C. § 1232(c)(2(A), had a protected liberty interest in a pre-deprivation hearing). So too here.

The Court thus turns to what procedures are constitutionally sufficient to protect Petitioner's protected liberty interest applying the three-part test established in *Matthews v. Eldridge*, 424 U.S. 319 (1976). This framework requires a court to consider:

> [1] the private interest that will be affected by the official action; [2]

---

Circuit has rejected this position. *See Rodriguez Vazquez v. Bostock*, ___ F.4th ___, No. 25-6842, 2026 WL 2196424, at *3 (9th Cir. July 30, 2026) ("[noncitizens] present without admission who are apprehended in the interior of the United States are subject to the detention regime of § 1226, not § 1225(b)(2)(A).").

[3] The government's insistence that Petitioner failed to exhaust his claims because he never requested a redetermination hearing before an immigration judge is likewise unpersuasive. *See Barrientos v. Moss*, No. 1:26-CV-05943-NW, 2026 WL 2283034, *2 (E.D. Cal. Aug. 7, 2026) ("[a] post-hoc bond hearing where the Immigration Judge would only consider Petitioner's potential flight risk or danger to the community would not cure the harm alleged here—i.e., arrest and detention without a warrant"); *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025) ("a post-deprivation hearing cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty.").

United States District Court
Northern District of California

> the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and [3] the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id*. at 335. Each of these factors weighs in Petitioner's favor.

First, as noted above, Petitioner has a significant liberty interest in remaining out of custody as he has been for the past four years. He has built a stable law-abiding life in the United States with his mother since they fled domestic abuse in Guatemala. (Dkt. No. 1 at ¶ 42.) He works as a cook at a Korean restaurant and hopes to attend culinary school. (*Id.*) *See, e.g.*, *Diaz v. Kaiser*, No. 3:25-cv-05071, 2025 WL 1676854 (N.D. Cal. June 14, 2025) (cleaned up) (holding petitioner had a substantial private interest in remaining out of custody where it would enable to him to "work[ ], liv[e] at home, and be[ ] with family and friends to form the enduring attachments of normal life"); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) (holding petitioner had a substantial liberty interest where he had been released from custody for 18 months and was living with his wife, spending time with his mother and other family members, working as a bicycle mechanic, and developing friendships in his community).

Second, "the risk of an erroneous deprivation of liberty is high where, as here, the petitioner has not received any bond or custody redetermination hearing." *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1047 (E.D. Cal. 2025) (cleaned up). Civil immigration detention is supposed to be nonpunitive and permissible only to prevent flight or protect against danger to the community, *see Zadvydas*, 533 U.S. at 690, but the government offers no evidence Petitioner's detention would serve either purpose. The Court rejects the government's suggestion a post-deprivation hearing is sufficient. *See Domingo v. Kaiser*, No. 25-cv-05893 (RFL), 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025) ("Even if Petitioner-Plaintiff received a prompt post-detention bond hearing under 8 U.S.C. § 1226(a) and was released at that point, he will have already suffered the harm that is the subject of his motion: that is, his potentially erroneous detention.").

Finally, there is no countervailing government interest which would support conducting a bond hearing only *after* Petitioner has been detained, rather than before. *See Morrissey*, 408 U.S. at 483 ("the State has an overwhelming interest in being able to return the individual to

imprisonment without the burden of a new adversary criminal trial[,] ... [y]et, the State has no interest in revoking parole without some informal procedural guarantees."). The government has not articulated a legitimate interest supporting arresting Petitioner without a pre-detention hearing. "In immigration court, custody hearings are routine and impose a minimal" cost." *Singh*, 803 F. Supp. 3d at 1048 (cleaned up). "If the government wishes to re-arrest [petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low." *Ortega*, 415 F. Supp. 3d at 970.

In sum, each of the *Matthews* factors favor Petitioner and he has demonstrated, at a minimum, serious legal questions regarding his claim that the Due Process Clause entitles him to a bond hearing before an immigration judge prior to any re-arrest or detention.

### B. Irreparable Harm

Petitioner is likely to suffer irreparable harm in the absence of preliminary injunctive relief. While Petitioner is currently out of ICE custody as a result of the Court's TRO order, there is no reason to believe the government will not immediately seek to detain him as soon as the TRO expires. "Deprivation of physical liberty by detention constitutes irreparable harm." *Arevalo v. Hennessy*, 882 F.3d 763, 767 (9th Cir. 2018); *see also Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) ("It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury."). "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005). Unconstitutional deprivation of liberty satisfies the burden of irreparable harm.

### C. Balance of Hardships and the Public Interest

Lastly, the balance of the equities and the public interest, which merge in this case because the government is the opposing party, tip sharply in Petitioner's favor. Preventing the violation of constitutional rights serves the public interest. *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005). Specifically, "the public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Jorge M. F. v. Wilkinson*, No. 21-CV-01434-JST, 2021

WL 783561, at *3 (N.D. Cal. Mar. 1, 2021) (cleaned up).

The only interest asserted by the government is in "upholding the existing regulatory scheme, ensuring that the roles of the immigration courts and USCIS are not usurped or improperly collaterally attacked through habeas proceedings and requiring Petitioner to avail himself of the procedure protections already afforded by the § 1226(a) framework rather than creating additional, burdensome processes." (Dkt. No. 8 at 9.) But the only potential injury the government faces is a "short delay" in detaining Petitioner if it "ultimately demonstrates to a neutral decisionmaker" his detention is necessary to prevent flight or danger to the community. *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, at *14 (N.D. Cal. Sept. 12, 2025). The government provides no explanation as to how holding a pre-detention bond hearing would interfere with the enforcement of its immigration laws. The Court thus concludes the balance of hardships tips sharply in Petitioner's favor.

## CONCLUSION

For the reasons stated above, the Court GRANTS Petitioner's request for a preliminary injunction. If the government seeks to re-detain Petitioner, it must provide no less than seven (7) days' notice and a pre-detention hearing during which a neutral decisionmaker must consider whether Petitioner is either a danger to the community or flight risk such that his physical custody is required. This Order shall remain in effect until further order of the Court. The government does not request, and the Court declines to require, a security.

The parties shall meet and confer and, within 14 days of the date of this order, propose a schedule for resolving the remainder of this case or a stipulation that the reasoning in this order warrants granting the petition and entering judgment.

**IT IS SO ORDERED.**

Dated: August 21, 2026

Jacqueline Scott Corley

JACQUELINE SCOTT CORLEY
United States District Judge